```
 1                    UNITED STATES DISTRICT COURT
                      DISTRICT OF NEW JERSEY
 2
   _____
 3 STONEMOR, INC.,
                    PETITIONER
 4
      Vs.                            CIVIL NO.
 5                                   22-cv-1388 (GC)
   THE INTERNATIONAL BROTHERHOOD
 6 OF TEAMSTERS, LOCAL 469,
                    RESPONDENT
 7 _____

 8
                            JANUARY 25, 2023
 9                          CLARKSON S. FISHER COURTHOUSE
                            402 EAST STATE STREET
10                          TRENTON, NEW JERSEY  08608

11

12 B E F O R E:        THE HONORABLE GEORGETTE CASTNER
                       U.S. DISTRICT COURT JUDGE
13                     DISTRICT OF NEW JERSEY

14
   A P P E A R A N C E S:
15
      DUANE MORRIS, LLP
16    BY:  PATRICE E. LETOURNEAU, ESQUIRE
           JAMES R. REDEKER, ESQUIRE
17         ELIZABETH MINCER, ESQUIRE
      FOR THE PLAINTIFF
18
      KROLL, HEINEMAN, PTASIEWICZ & PARSONS, LLC
19    BY:  SETH B. KENNEDY, ESQUIRE
      FOR THE DEFENDANT
20

21
   HEARING ON PETITIONER'S MOTION TO VACATE ARBITRATION
22 AWARD/RESPONDENT'S MOTION TO CONFIRM ARBITRATION AWARD

23

24
              FRANCIS J. GABLE, C.C.R., C.R.R.
25                 OFFICIAL U.S. REPORTER
                     (856) 889-4761
```

1        THE COURT:  Good afternoon.  We are on the record in

2   the matter of StoneMor, Inc. versus International Brotherhood

3   of Teamsters, Local 469, Docket Number 22-cv-1388.  May I have

4   appearance of counsel please.

00:05   5        MS. LETOURNEAU:  Good afternoon, your Honor, Patrice

6   Letourneau, James Redeker and Elizabeth Mincer of Duane Morris

7   on behalf of StoneMor.

8        THE COURT:  Good afternoon.

9        MR. KENNEDY:  Good afternoon, your Honor, Seth

00:05  10   Kennedy from the firm of Kroll, Heineman, Ptasiewicz and

11   Parsons on behalf of Teamsters Local 469.

12        THE COURT:  Good afternoon.

13        We are here for argument on petitioner's motion to

14   vacate an arbitration award, and respondent's cross motion and

00:05  15   opposition.  So I scheduled the oral argument because I had

16   some questions for the parties.  I've read the papers, I'm

17   familiar with the issues, I just wanted to kind of narrow in

18   on some questions I had.  So let's start with that.

19        One of the issues I see -- please be seated.  One of

00:06  20   the issues that I wanted to raise and hear from the parties

21   about was when did a valid agreement arise?  Meaning, on

22   October 5th, 2020 the tentative agreement was ratified.  At

23   that time does it become an enforceable agreement?

24        MS. LETOURNEAU:  Your Honor, if I may and I'm going

00:06  25   to quote from the union's brief --

1          THE COURT:  And I'm asking the question specifically

2     because four days later we have a dispute on a pretty

3     significant term of the agreement; right?

4          MS. LETOURNEAU:  Um-hmm.

00:07    5          THE COURT:  So, was there a meeting of the minds at

6     that time or not and therefore the agreement's not valid?  I'd

7     like to hear from you about that.

8          MS. LETOURNEAU:  So to quote from the union's brief

9     which is on page 2, they state that:  The parties reached an

00:07    10    agreement which will become final upon ratification by the

11    union members and the union's ratification vote took place on

12    October 5th, 2020.

13         We also have case law in the Third Circuit that we

14    cite in our brief, *Mack Trucks*, and this Circuit has held that

00:07    15    in despite of unresolved disputes a collective bargaining

16    agreement is still in effect and the contractually mandated

17    grievance procedures must be followed even as the parties --

18    as again the union's brief state -- were reformatting the CBA.

19         So, despite their being unresolved disputes as to

00:07    20    the interpretation of this waive provision, the agreement was

21    in effect and I don't think -- believe that there's a dispute

22    that the agreement was in effect as of October 5th, 2020 and

23    that the contractually mandated grievance procedures which

24    again that is how the union has described the grievance

00:08    25    procedure in their brief was in effect and must be followed.

1    MR. KENNEDY:  And your Honor, if I may, I don't

2    think there's any dispute that the agreement was final and

3    binding as of October 5th.  Within days after that however,

4    the language that was being proposed by the employer wasn't a

00:08    5    reformatting of the agreement and it wasn't a dispute as to

6    the interpretation of the agreement.  It was a proposed

7    rewriting of the language of the agreement.

8    I think one of the most salient issues here as

9    Arbitrator Charles noted in her award is that the first time

00:09    10    that the employer acknowledged that the agreement -- that the

11    language which had been agreed to on October 5th was going to

12    be a term of the contract, was December.  From October through

13    December there were ongoing active discussions, not of

14    interpretation and not of formatting, but of the very language

00:09    15    of the contract itself.

16    THE COURT:  Right.  But that's where I have an

17    issue.  How can you say you have a valid agreement October

18    5th, and then say we're still working on the agreement, it's

19    not valid until December?  You can't have it both ways.  You

00:09    20    can't say I have a valid agreement today we ratified it, but

21    then the agreement's finalized December 29th, 2020.

22    MR. KENNEDY:  And that dispute arose as a result of

23    the new proposals being thrown in and the ongoing discussions,

24    and this -- this -- it didn't just lay dormant, the parties

00:10    25    went through mediation and were in ongoing discussions of what

1   that final language would be.  And there's no way to arbitrate

2   the interpretation of language that hasn't been finalized.

3           THE COURT:  But you agree that on October 5th, 2020,

4   the agreement was ratified and it becomes a binding agreement

5   at that point in time; correct?

6           MR. KENNEDY:  Yes, your Honor.

7           THE COURT:  Okay.  Mr. Kennedy, I read the -- and I

8   apologize if I'm mispronouncing this one, the *Monogahela*

9   *Valley Hospital* case; tell me how you distinguish that case

10  from it applying here?

11          MR. KENNEDY:  Give me one moment to pull up --

12          THE COURT:  Sure.

13          (Brief pause.)

14          MR. KENNEDY:  Forgive me, your Honor.

15          THE COURT:  That's okay.  I want to go back and

16  drill down on this.  Because to me it's seeming like the union

17  wants it both ways.  They want to have to benefit of the

18  agreement on October 5th, but they don't want to comply with

19  the actual terms of the agreement on October 5th.

20          MR. KENNEDY:  Well, your Honor, the union did want

21  to comply with the terms of the actual agreement on October

22  5th, but again the dispute -- in the union's the agreement was

23  clear and final and binding on October 5th.  But particularly

24  in the context of a first collective bargaining agreement,

25  where the terms are being set out for the first time, there

1   was no prior agreement history before this agreement.  And the

2   establishment of the language for this contract set the tone

3   for the bargaining relationship moving forward, so the actual

4   terms of the final collective bargaining agreement become a

5   significant point.

6          So, the union wasn't just waiting to file a

7   grievance for the sake of waiting to file a grievance, the

8   union was attempting to amicably resolve the terms of the

9   agreement as it was trying together.  When a dispute came up,

10  the parties discussed and while there was discussion of the

11  grievance and arbitration procedure earlier in that

12  correspondence you can see in the correspondence as it goes

13  there's continuing attempts by the employer to change not just

14  the interpretation of the language, but the language itself.

15         And again, that language is ultimately what needs to

16  be interpreted by an arbitrator.  And before there was final

17  agreement on what that language was, that would have been

18  asking the arbitrator not to interpret the language of a

19  contract, but to look at two competing language proposals, and

20  decide which one should have been the contract.

21         In the public sector labor relations we call that

22  interest arbitration where you go to arbitration and two sides

23  give an arbitrator two different contract proposals, and the

24  arbitrator chooses which one is going to go in the contract;

25  this was grievance arbitration.  And that required the

1    language to be finalized for an arbitrator to interpret.  If

2    the employer's response in early October had been we'll put

3    the language into the contract and if we have the arbitrate it

4    we'll arbitrate it, that would have been one thing, that

5    wasn't how the employer responded.

6         The employer responded by repeatedly proposing new

7    language that should have been included in the contract.  And

8    because that language wasn't final, the union couldn't go to

9    grievance arbitration until that language was signed.

10        MS. LETOURNEAU:  Your Honor --

11        THE COURT:  Ms. Letourneau?

12        MS. LETOURNEAU:  This Circuit has stated that

13   despite a CBA not being finalized in terms of reformatting --

14   and again I'm using the terms that the union used in their

15   brief, we were reformatting a CBA; that you can have terms out

16   there that needed interpretation or need discussion and that

17   doesn't make the agreement not effective.

18        And what we're -- haven't said or what I haven't

19   heard is that the contractual grievance procedure was any way

20   at issue or wasn't final.  Every single provision of this

21   agreement according to them on October 5th was final, and they

22   could have gone to arbitration at that point.  In fact, you

23   know, we had e-mails at Exhibit E where what is at issue and

24   what was at issue in the arbitration is exactly what's being

25   discussed and at the end the employer says to the union you

1    can file a grievance if you like to and they failed to do so.

2         So I don't see -- again as your Honor said before,

3    how they want to have their cake and eat it too.  They want

4    this provision and this issue to be somehow ripe and binding

00:16    5    as of October 5th, and yet at the same time they're not

6    required to follow the grievance procedures that they

7    themselves characterized as contractually mandated.

8         THE COURT:  And what do you think about the fact

9    that the parties' conduct -- like isn't just submitting a

00:16    10   grievance in writing, isn't that just a formality?  I mean the

11   parties were actually negotiating, attending mediations, so

12   essentially the conduct is sufficient to show that they were

13   proceeding under the grievance procedures?

14        MS. LETOURNEAU:  The employer didn't feel that that

00:17    15   conduct was sufficient, and there's you know contractually

16   mandated language for a reason.  They agreed that this is how

17   they were going to proceed.  And if we're going to disregard

18   that then why can't we disregard any provision in the

19   contract.  They were repeatedly told we don't believe that you

00:17    20   have filed a grievance and it was raised over and over again

21   that you haven't followed what you agreed to do.

22        So I mean I don't think that it's a matter of --

23   it's reading an exception into that paragraph that isn't

24   there, there was no exception.  It said time is of the

00:17    25   essence, this is how we need to file a grievance if we're

1    going to file one, and you have to do it within 10 days and

2    that's something that they agreed to.

3            THE COURT:  And what would that look like, sending

4    you a letter, a written submission?

5            MS. LETOURNEAU:  Their grievance is at exhibit --

6    one moment; at Exhibit C you'll see their grievance report,

7    and note that they have to note what the date is the date

8    occurred.  So we have two different occurrences here.  First

9    we have shortly after the agreement is entered into when

10   there's a dispute as to the interpretation of that provision;

11   and then second we have another occurrence where when the

12   employer goes to pay the employees and doesn't include that --

13   that wage increase that was at issue.  So we have two separate

14   occurrences in October.

15           Had they filed a grievance report those would have

16   been listed in there.  Here we have a grievance report that

17   says date of incident is December 30th, 2020 and continuing.

18   There -- you know, it's making a record and it's setting forth

19   what it is that's at issue and how jurisdictionally the

20   arbitrator is supposed to decide those issues.  We don't have

21   that here.

22           THE COURT:  Mr. Kennedy?

23           MR. KENNEDY:  Well, your Honor, I think on the

24   subject of when violations occur, the -- and I recall this --

25   I discussed this in our post arbitration brief which is

1  connected to our cross petition; for wage disputes, if a wage

2  is being wrongly paid or alleged to be wrongly paid, the

3  violation is reoccurring with each new paycheck.  So, even if

4  the union had not filed a grievance --

00:19   5          THE COURT:  I'm sorry, Mr. Kennedy; that's someone's

6  telephone?

7          MS. MINCER:  If I may, your Honor, it may be a

8  medical device.

9          THE COURT:  Okay.  Go ahead, Mr. Kennedy.

00:19   10          MR. KENNEDY:  So with each new paycheck where a

11  wrong wage is being paid, that is a new contract violation.

12  So even in the event that the union's correspondence and

13  conduct with the employer from October to December couldn't

14  act as a stand-in for the grievance procedure, there are still

00:20   15  ongoing violations.

16          And if the arbitrator -- or it would be the union's

17  argument as made to the arbitrator is correct, every new

18  paycheck being paid to date that has not been corrected for a

19  wage increase missed two years ago is still incorrect.  Which

00:20   20  means that the -- there is still a valid harm to be addressed

21  and still a viable claim to be made.

22          That being said, also yes, the employer was on

23  notice of the dispute, the employer was on notice of the

24  union's intent to pursue that dispute throughout those

00:20   25  discussions.  And while the formalisms of the grievance

1  procedure may not have been strictly adhered to during that

2  timeframe, again the union would submit that declining to

3  engage in that process was because the language was not

4  final --

5        THE COURT:  But wouldn't the date of occurrence,

6  wouldn't it have been sooner, as opposed to the December 29th,

7  2020?  Is that the date of --

8        MS. LETOURNEAU:  That's the date that they put down

9  in their grievance report.  Now, that's not what the

10  arbitrator applied in terms of the reasoning and nor is it

11  supported by the CBA.  Yes, under here the grievance arises

12  when there's --  should any grievance arise as to the

13  interpretation of or alleged violation of the agreement, the

14  union shall process the grievance in accordance with the

15  following procedures; if union shall reduce it to writing and

16  take that to the superintendent or his designees within 10

17  days of this occurrence in an attempt to effect a satisfactory

18  settlement.

19        That's what the grievance procedure -- the

20  contractually mandated grievance procedures that they agreed

21  to state.  It's not a continuing violation nor is that the

22  reasoning that the arbitrator applied, nor is it supported by

23  the CBA.  That once they knew that there was a disagreement as

24  to the interpretation of the agreement and believed that there

25  was an alleged violation, they had 10 days to file grievance

1  report to trigger the contractually mandated grievance

2  procedures.

3         They didn't do that, they waited 50 days, all the

4  way to December to doing anything, and then put down an

5  alleged occurrence date that doesn't even match when the

6  dispute arose.

7         THE COURT:  When the actual occurrence would have

8  started, which would have been on the first paychecks where

9  you realized that we don't have the increase that we thought

10  we were entitled to; right?

11         MR. KENNEDY:  Correct, that would have been the

12  first of many occurrences.

13         THE COURT:  So, based on your grievance you would

14  say we don't have a grievance, those paychecks were right?

15         MR. KENNEDY:  No, your Honor, I think the date of

16  occurrence on the grievance was likely lifted simply as a form

17  of being filled out.  The union would not be waiving its claim

18  as to the inaccuracy of the earlier paychecks, though to the

19  extent that the arbitrator would have applied a December 30th

20  occurrence date as opposed to an earlier one, again, that

21  would have been a procedural matter as to where to cut off the

22  remedy and wouldn't speak to the merits of the grievance

23  itself or the reasoning of the award.

24         MS. LETOURNEAU:  Your Honor --

25         THE COURT:  Counsel?

1          MS. LETOURNEAU:  The agreement says -- again the

2   contractually mandated grievance procedures state that if they

3   fail to follow the procedures, then it's settled on the basis

4   of the last answer of the employer.  So if it's not -- like

00:23   5   the last answer of the employer is what's binding.  So, when

6   they didn't back in October raise the grievance file it

7   appropriately and take that procedural step, our response that

8   this was how we were interpreting the CBA and that this is how

9   we were paying the employees as of I believe it was October

00:24   10   29th, was binding and settled per the agreement that they

11   agreed to.

12          THE COURT:  And how do you -- let me hear your

13   position with respect to the great deference that we give to

14   arbitrator's decisions.

00:24   15          MS. LETOURNEAU:  There is great deference to the

16   interpretation of a contract by the arbitrator.

17          THE COURT:  Including clear errors of law.

18          MS. LETOURNEAU:  Well, this isn't an error of law,

19   this is a complete disregard of the terms of the agreement.

00:24   20   She was reading into the agreement a provision that doesn't

21   exist there, there are no exceptions.  It was time is of the

22   essence, it was 10 days.  It's not 10 days while the parties

23   are trying to work out their -- their, you know -- their

24   dispute as to the interpretation of the agreement.  It's a

00:24   25   flat 10 days.  That is -- there's nothing in there that would

1    grant her authority to read that into the contract.

2         And so it is not of great deference, it is not an

3    interpretation of law, it's not an interpretation of contract,

4    it's wholly made up.

5         THE COURT:  Mr. Kennedy?

6         MR. KENNEDY:  I would wholly disagree with that

7    characterization.  And at a base principle the purpose of the

8    broad deference that arbitration awards receive in our courts,

9    is an acknowledgment of the fact that arbitration of contract

10   disputes is part and parcel of the system that provides for

11   amicable labor relations, and for resolution of those disputes

12   in an amicable and contained way.

13        And the -- what happened here was there was a

14   contractually mandated grievance procedure, this was a first

15   contract and the parties were working towards figuring out the

16   language of that first contract.  The arbitrator didn't read

17   any new contract terms in, the arbitrator plain on the face of

18   her award was perfectly aware of the contract requirements and

19   read them, but on her view of the situation and in light of

20   the evidence presented at the arbitration hearing, her

21   application of that grievance procedure and the legal canons

22   around procedural arbitrability was that under these

23   circumstances the union's nonadherence to the strictures of

24   the grievance procedure before December 30th did not

25   invalidate the grievance.

1      That was her conclusion applying valid legal

2  interpretation to the terms of the agreement, the evidence,

3  the conduct of the parties, the testimony that she received at

4  the arbitration hearing and that is entitled to deference,

5  your Honor.

6          THE COURT:  Go ahead, counsel.

7          MS. LETOURNEAU:  There is no dispute about the --

8  the grievance procedure.  You're talking about what is you

9  know an issue of interpretation, well there was no dispute as

10  to this is the grievance procedure, there was no dispute as to

11  the interpretation of that grievance procedure, and there was

12  nothing in there that would allow the arbitrator to say that

13  they could toll that, nor did the parties in any way toll that

14  grievance process.

15          And this is precisely why Section 10 of the FAA is

16  there, it's for these situations where an arbitrator cedes

17  their authority by reading into a parties' agreement

18  contractual language that doesn't exist.

19          THE COURT:  Mr. Kennedy, what's the authority for

20  the arbitrator to say that the parties' conduct is enough to

21  toll the provisions under the agreement?  What case law are

22  you relying on to support that the arbitrator -- that there's

23  authority for that, other than just the conduct of the

24  parties?

25          MR. KENNEDY:  Well, the arbitrator does not cite any

1    case law in that provision of her award admittedly, but

2    particularly in situations where -- where a continuing

3    violation is -- is the issue being alleged, arbitrators

4    generally do grant the parties some leeway in strict adherence

00:28    5    to grievance procedures.

6        And again, this was a situation where because they

7    -- because the language itself was still what was at issue,

8    her understanding of applying those principles was that under

9    those circumstances the union's waiting to file a formal

00:28    10   grievance until the employer and for the first time

11   acknowledged the definitively agreed-to language was the

12   agreement, multiple times throughout the correspondence the

13   employer refers to their modified language as what was

14   actually agreed to, even though it differs markedly from what

00:28    15   was in the tentative agreement.  Under those circumstances the

16   arbitrator applied some leeway to allow for the process that

17   was seeking to finalize that language.

18       THE COURT:  And what case law are you relying on

19   that allows the arbitrator to do that?

00:29    20       MR. KENNEDY:  Your Honor, I was not able to identify

21   any cases that were specifically on point, though the cases

22   that are cited by the employer in their filings are materially

23   distinguishable in where they fall in the grievance process

24   and the reasoning of the arbitrator's decision.  This

00:29    25   arbitrator's decision is perfectly consistent with a large

1   body of case law within the context of labor arbitration that

2   allows for -- for some flexibility in the procedural timelines

3   where continuing violations are...

4          THE COURT:  Anything --

00:29    5          MS. LETOURNEAU:  The union wasn't able to find case

6   law because there isn't case law on point.  In fact you know,

7   the Fifth Circuit in a decision, *Southwest Airlines* on almost

8   identical facts, found for the employer and vacated an

9   arbitration award that had been -- excuse me; vacated an

00:30    10   arbitration award that the union had tried to argue was timely

11   per the grievance procedures.  And this case is identical to

12   that, that there were no exceptions under the grievance

13   procedures.  The arbitrator did not have authority to read in

14   exceptions in the contract that didn't exist.

00:30    15          And that's consistent with both Third Circuit case

16   law and still -- and following *Steelworkers* and *Mack Trucks*

17   and the Fifth Circuit in *Southwest Airlines*.

18          MR. KENNEDY:  And your Honor, one of the most --

19   *Southwest Airlines* is not specifically on point.  And one of

00:30    20   the most important pieces of that is in *Southwest Airlines* the

21   arbitrator specifically held that the signature date of the

22   CBA was the effective date of the CBA.  That is not what

23   Arbitrator Charles determined.  Arbitrator Charles was looking

24   at one specific contract provision, and saying that because

00:31    25   the parties had not finalized that language, the union was

1   entitled to ensure that the language it had agreed to was the

2   language of the contract before advancing to the grievance

3   procedure.

4         If Arbitrator Charles had said the CBA wasn't --

5   wasn't signed until December 30th so December 30th is the

6   effective date of the CBA, we wouldn't be here right now

7   because she would have been wrong.  She wasn't wrong, her --

8   her reasoning was significantly different from the reasoning

9   in the underlying arbitration award in *Southwest Airlines*, and

10  that makes this case significantly different from *Southwest*

11  *Airlines*.

12        THE COURT:  Right.  Instead she said that the

13  agreement was valid October 5th, 2020; right?

14        MR. KENNEDY:  That's correct, your Honor, and

15  then --

16        THE COURT:  It doesn't seem to appear that the

17  parties dispute that.

18        MR. KENNEDY:  The parties don't dispute that, your

19  Honor, and neither did the arbitrator but the arbitrator's

20  legal reasoning from that point is not inconsistent with that.

21        THE COURT:  I don't have any further questions.  Ms.

22  Letourneau, do you have anything further you'd like to add?

23        MS. LETOURNEAU:  No, I appreciate your Honor's time.

24  We feel that -- as you said, the agreement was effective

25  October 5th and as of October 5th the contractually mandated

1    grievance procedures were to be followed.  And there was no

2    exception under those contractually mandated grievance

3    procedures to allow for a tolling just because the parties

4    were continuing to discuss the interpretation of one of the

5    wage provisions that they likewise would like to have

6    enforced.  And they want to have their cake and eat it too and

7    it doesn't work that way.

8            THE COURT:  Okay.  Well, I appreciate the parties

9    appearing today for argument.  I just wanted to go over some

10   of those questions that I had.  It was very helpful, so I

11   appreciate it.  I will reserve decision but will have an

12   opinion coming shortly.

13           MS. LETOURNEAU:  Thank you, your Honor.

14           MR. KENNEDY:  Thank you very much your Honor.

15           THE COURT:  Thank you.  This matter is adjourned.

16           (Matter concluded.)

17                    - - -

18   "I certify that the foregoing is a correct transcript from the

19   record of proceedings in the above-entitled matter."

20

21   /S/ Francis J. Gable, C.C.R., C.R.R.   April 24, 2023

22

23   _____          _____

24   Signature of Court Reporter                  Date

25

| / | A |
|---|---|
| /S [1] - 20:21 | **able** [2] - 17:20, 18:5 |
| | **above-entitled** [1] - 20:19 |
| **0** | **accordance** [1] - 12:14 |
| | **according** [1] - 8:21 |
| **08608** [1] - 2:10 | **acknowledged** [2] - 5:10, 17:11 |
| | **acknowledgment** [1] - 15:9 |
| **1** | **act** [1] - 11:14 |
| | **active** [1] - 5:13 |
| **10** [7] - 10:1, 12:16, 12:25, 14:22, 14:25, 16:15 | **actual** [4] - 6:19, 6:21, 7:3, 13:7 |
| | **add** [1] - 19:22 |
| **2** | **addressed** [1] - 11:20 |
| | **adhered** [1] - 12:1 |
| **2** [1] - 4:9 | **adherence** [1] - 17:4 |
| **2020** [8] - 3:22, 4:12, 4:22, 5:21, 6:3, 10:17, 12:7, 19:13 | **adjourned** [1] - 20:15 |
| **2023** [2] - 2:8, 20:21 | **admittedly** [1] - 17:1 |
| **22-cv-1388** [2] - 2:5, 3:3 | **advancing** [1] - 19:2 |
| **24** [1] - 20:21 | **afternoon** [5] - 3:1, 3:5, 3:8, 3:9, 3:12 |
| **25** [1] - 2:8 | **ago** [1] - 11:19 |
| **29th** [3] - 5:21, 12:6, 14:10 | **agree** [1] - 6:3 |
| | **agreed** [9] - 5:11, 9:16, 9:21, 10:2, 12:20, 14:11, 17:11, 17:14, 19:1 |
| **3** | **agreed-to** [1] - 17:11 |
| | **agreement** [45] - 3:21, 3:22, 3:23, 4:3, 4:10, 4:16, 4:20, 4:22, 5:2, 5:5, 5:6, 5:7, 5:10, 5:17, 5:18, 5:20, 6:4, 6:18, 6:19, 6:21, 6:22, 6:24, 7:1, 7:4, 7:9, 7:17, 8:17, 8:21, 10:9, 12:13, 12:24, 14:1, 14:10, 14:19, 14:20, 14:24, 16:2, 16:17, 16:21, 17:12, 17:15, 19:13, 19:24 |
| **30th** [5] - 10:17, 13:19, 15:24, 19:5 | |
| | **agreement's** [2] - 4:6, 5:21 |
| **4** | **ahead** [2] - 11:9, 16:6 |
| | **Airlines** [6] - 18:7, 18:17, 18:19, 18:20, 19:9, 19:11 |
| **402** [1] - 2:9 | **alleged** [5] - 11:2, 12:13, 12:25, 13:5, 17:3 |
| **469** [3] - 2:6, 3:3, 3:11 | **allow** [3] - 16:12, 17:16, 20:3 |
| **5** | **allows** [2] - 17:19, 18:2 |
| | **almost** [1] - 18:7 |
| **50** [1] - 13:3 | |
| **5th** [16] - 3:22, 4:12, 4:22, 5:3, 5:11, 5:18, 6:3, 6:18, 6:19, 6:22, 6:23, 8:21, 9:5, 19:13, 19:25 | |
| **8** | |
| **856** [1] - 11:2 | |
| **889-4761** [1] - 2:25 | |

| | |
|---|---|
| **amicable** [2] - 15:11, 15:12 | 13:23, 15:18, 17:1, 18:9, 18:10, 19:9 |
| **amicably** [1] - 7:8 | **AWARD/ RESPONDENT'S** [1] - 2:22 |
| **answer** [2] - 14:4, 14:5 | **awards** [1] - 15:8 |
| **apologize** [1] - 6:8 | **aware** [1] - 15:18 |
| **appear** [1] - 19:16 | |
| **appearance** [1] - 3:4 | **B** |
| **appearing** [1] - 20:9 | |
| **application** [1] - 15:21 | **bargaining** [4] - 4:15, 6:24, 7:3, 7:4 |
| **applied** [4] - 12:10, 12:22, 13:19, 17:16 | **base** [1] - 15:7 |
| **applying** [3] - 6:10, 16:1, 17:8 | **based** [1] - 13:13 |
| **appreciate** [3] - 19:23, 20:8, 20:11 | **basis** [1] - 14:3 |
| **appropriately** [1] - 14:7 | **become** [3] - 3:23, 4:10, 7:4 |
| **April** [1] - 20:21 | **becomes** [1] - 6:4 |
| **arbitrability** [1] - 15:22 | **behalf** [2] - 3:7, 3:11 |
| **arbitrate** [3] - 6:1, 8:3, 8:4 | **benefit** [1] - 6:17 |
| **ARBITRATION** [2] - 2:21, 2:22 | **binding** [6] - 5:3, 6:4, 6:23, 9:4, 14:5, 14:10 |
| **arbitration** [17] - 3:14, 7:11, 7:22, 7:25, 8:9, 8:22, 8:24, 10:25, 15:8, 15:9, 15:20, 16:4, 18:1, 18:9, 18:10, 19:9 | **body** [1] - 18:1 |
| | **Brief** [1] - 6:13 |
| | **brief** [7] - 3:25, 4:8, 4:14, 4:18, 4:25, 8:15, 10:25 |
| **Arbitrator** [4] - 5:9, 18:23, 19:4 | **broad** [1] - 15:8 |
| **arbitrator** [24] - 7:16, 7:18, 7:23, 7:24, 8:1, 10:20, 11:16, 11:17, 12:10, 12:22, 13:19, 14:16, 15:16, 16:7, 16:12, 16:16, 16:20, 16:22, 16:25, 17:16, 17:19, 18:13, 18:21, 19:19 | **Brotherhood** [1] - 3:2 |
| | **BROTHERHOOD** [1] - 2:5 |
| | **BY** [2] - 2:16, 2:19 |
| | **C** |
| | |
| | **C.C.R** [2] - 2:24, 20:21 |
| **arbitrator's** [4] - 14:14, 17:24, 17:25, 19:19 | **C.R.R** [2] - 2:24, 20:21 |
| | **cake** [2] - 9:3, 20:6 |
| **arbitrators** [1] - 17:3 | **canons** [1] - 15:21 |
| **are..** [1] - 18:3 | **case** [13] - 4:13, 6:8, 6:9, 16:21, 17:1, 17:18, 18:1, 18:5, 18:6, 18:11, 18:15, 19:10 |
| **argue** [1] - 18:10 | |
| **argument** [4] - 3:13, 3:15, 11:17, 20:9 | |
| **arise** [2] - 3:21, 12:12 | **cases** [2] - 17:21 |
| **arises** [1] - 12:11 | **CASTNER** [1] - 2:12 |
| **arose** [2] - 5:22, 13:6 | **CBA** [10] - 4:18, 8:13, 8:15, 12:11, 12:23, 14:8, 18:22, 19:4, 19:6 |
| **attempt** [1] - 12:17 | |
| **attempting** [1] - 7:8 | |
| **attempts** [1] - 7:13 | **cedes** [1] - 16:16 |
| **attending** [1] - 9:11 | **certify** [1] - 20:18 |
| **authority** [5] - 15:1, 16:17, 16:19, 16:23, 18:13 | **change** [1] - 7:13 |
| | **characterization** [1] - 15:7 |
| **AWARD** [1] - 2:22 | **characterized** [1] - 9:7 |
| **award** [8] - 3:14, 5:9, | **Charles** [4] - 5:9, |

| | |
|---|---|
| 18:23, 19:4 | **counsel** [2] - 3:4, 16:6 |
| **chooses** [1] - 7:24 | **Counsel** [1] - 13:25 |
| **Circuit** [6] - 4:13, 4:14, 8:12, 18:7, 18:15, 18:17 | **COURT** [34] - 2:1, 2:12, 3:1, 3:8, 3:12, 4:1, 4:5, 5:16, 6:3, |
| **circumstances** [3] - 15:23, 17:9, 17:15 | |
| **cite** [2] - 4:14, 16:25 | |
| **cited** [1] - 17:22 | |
| **CIVIL** [1] - 2:4 | |
| **claim** [2] - 11:21, 13:17 | |
| **CLARKSON** [2] - 2:9 | |
| **clear** [2] - 6:23, 14:17 | |
| **collective** [3] - 4:15, 6:24, 7:4 | |
| **coming** [1] - 20:12 | |
| **competing** [1] - 7:19 | |
| **complete** [1] - 14:19 | |
| **comply** [2] - 6:18, 6:21 | |
| **concluded** [1] - 20:16 | |
| **conclusion** [1] - 16:1 | |
| **conduct** [7] - 9:9, 9:12, 9:15, 11:13, 16:3, 16:20, 16:23 | |
| **CONFIRM** [1] - 2:22 | |
| **connected** [1] - 11:1 | |
| **consistent** [2] - 17:25, 18:15 | |
| **contained** [1] - 15:12 | |
| **context** [2] - 6:24, 18:1 | |
| **continuing** [6] - 7:13, 10:17, 12:21, 17:2, 18:3, 20:4 | |
| **contract** [22] - 5:12, 5:15, 7:2, 7:19, 7:20, 7:23, 7:24, 8:3, 8:7, 9:19, 11:11, 14:16, 15:1, 15:3, 15:9, 15:15, 15:16, 15:17, 15:18, 18:14, 18:24, 19:2 | |
| **contractual** [2] - 8:19, 16:18 | |
| **contractually** [10] - 4:16, 4:23, 9:7, 9:15, 12:20, 13:1, 14:2, 15:14, 19:25, 20:2 | |
| **Correct** [1] - 13:11 | |
| **correct** [4] - 6:5, 11:17, 19:14, 20:18 | |
| **corrected** [1] - 11:18 | |
| **correspondence** [4] - 7:12, 11:12, 17:12 | |

6:7, 6:12, 6:15, 8:11, 9:8, 10:3, 10:22, 11:5, 11:9, 12:5, 13:7, 13:13, 13:25, 14:12, 14:17, 15:5, 16:6, 16:19, 17:18, 18:4, 19:12, 19:16, 19:21, 20:8, 20:15
**Court** [1] - 20:24
**COURTHOUSE** [1] - 2:9
**courts** [1] - 15:8
**cross** [2] - 3:14, 11:1
**cut** [1] - 13:21

## D

**date** [13] - 10:7, 10:17, 11:18, 12:5, 12:7, 12:8, 13:5, 13:15, 13:20, 18:21, 18:22, 19:6
**Date** [1] - 20:24
**days** [9] - 4:2, 5:3, 10:1, 12:17, 12:25, 13:3, 14:22, 14:25
**December** [12] - 5:12, 5:13, 5:19, 5:21, 10:17, 11:13, 12:6, 13:4, 13:19, 15:24, 19:5
**decide** [2] - 7:20, 10:20
**decision** [4] - 17:24, 17:25, 18:7, 20:11
**decisions** [1] - 14:14
**declining** [1] - 7:17
**DEFENDANT** [1] - 2:19
**deference** [5] - 14:13, 14:15, 15:2, 15:8, 16:4
**definitively** [1] - 17:11
**described** [1] - 4:24
**designees** [1] - 12:16
**despite** [3] - 4:15, 4:19, 8:13
**determined** [1] - 18:23
**device** [1] - 11:8
**different** [4] - 7:23, 10:8, 19:8, 19:10
**differs** [1] - 17:14
**disagree** [1] - 15:6
**disagreement** [1] - 12:23
**discuss** [1] - 20:4
**discussed** [3] - 7:10, 8:25, 10:25
**discussion** [2] - 7:10,

8:16
**discussions** [4] - 5:13, 5:23, 5:25, 11:25
**dispute** [17] - 4:2, 4:21, 5:2, 5:5, 5:22, 6:22, 7:9, 10:10, 11:23, 11:24, 13:6, 14:24, 16:7, 16:9, 16:10, 19:17, 19:18
**disputes** [3] - 4:15, 4:19, 11:1, 15:10, 15:11
**disregard** [3] - 9:17, 9:18, 14:19
**distinguish** [1] - 6:9
**distinguishable** [1] - 17:23
**DISTRICT** [4] - 2:1, 2:1, 2:12, 2:13
**Docket** [1] - 3:3
**dormant** [1] - 5:24
**down** [3] - 6:16, 12:8, 13:4
**drill** [1] - 6:16
**DUANE** [1] - 2:15
**Duane** [1] - 3:6
**during** [1] - 12:1

## E

**e-mails** [1] - 8:23
**early** [1] - 8:2
**EAST** [1] - 2:9
**eat** [2] - 9:3, 20:6
**effect** [5] - 4:16, 4:21, 4:22, 4:25, 12:17
**effective** [4] - 8:17, 18:22, 19:6, 19:24
**ELIZABETH** [1] - 2:17
**Elizabeth** [1] - 3:6
**employees** [2] - 10:12, 14:9
**employer** [17] - 5:4, 5:10, 7:13, 8:5, 8:6, 8:25, 9:14, 10:12, 11:13, 11:22, 11:23, 14:4, 14:5, 17:10, 17:13, 17:22, 18:8
**employer's** [1] - 8:2
**end** [1] - 8:25
**enforceable** [1] - 3:23
**enforced** [1] - 20:6
**engage** [1] - 12:3
**ensure** [1] - 19:1
**entered** [1] - 10:9
**entitled** [4] - 13:10, 16:4, 19:1, 20:19
**error** [1] - 14:18

errors [1] - 14:17
**ESQUIRE** [4] - 2:16, 2:16, 2:17, 2:19
**essence** [2] - 9:25, 14:22
**essentially** [1] - 9:12
**establishment** [1] - 7:2
**event** [1] - 11:12
**evidence** [2] - 15:20, 16:2
**exactly** [1] - 8:24
**exception** [3] - 9:23, 9:24, 20:2
**exceptions** [3] - 14:21, 18:12, 18:14
**excuse** [1] - 18:9
**Exhibit** [2] - 8:23, 10:6
**exhibit** [1] - 10:5
**exist** [3] - 14:21, 16:18, 18:14
**extent** [1] - 13:19

## F

**FAA** [1] - 16:15
**face** [1] - 15:17
**fact** [4] - 8:22, 9:8, 15:9, 18:6
**facts** [1] - 18:8
**fail** [1] - 14:3
**failed** [1] - 9:1
**fall** [1] - 17:23
**familiar** [1] - 17:9
**Fifth** [2] - 18:7, 18:17
**figuring** [1] - 15:15
**file** [8] - 7:6, 7:7, 9:1, 9:25, 10:1, 12:25, 14:6, 17:9
**filed** [3] - 9:20, 10:15, 11:4
**filings** [1] - 17:22
**filled** [1] - 13:17
**final** [10] - 4:10, 5:2, 6:1, 6:23, 7:4, 7:16, 8:8, 8:20, 8:21, 12:4
**finalize** [1] - 17:17
**finalized** [5] - 5:21, 6:2, 8:1, 8:13, 18:25
**firm** [1] - 3:10
**first** [8] - 5:9, 6:24, 6:25, 13:8, 13:12, 15:14, 15:16, 17:10
**First** [1] - 10:8
**FISHER** [1] - 2:9
**flat** [1] - 14:25
**flexibility** [1] - 18:2
**follow** [2] - 9:6, 14:3
**followed** [4] - 4:17,

4:25, 9:21, 20:1
**following** [2] - 12:15, 18:16
**FOR** [2] - 2:17, 2:19
**foregoing** [1] - 20:18
**Forgive** [1] - 6:14
**form** [1] - 13:16
**formal** [1] - 17:9
**formalisms** [1] - 11:25
**formality** [1] - 9:10
**formatting** [1] - 5:14
**forth** [1] - 10:18
**forward** [1] - 7:3
**four** [1] - 4:2
**FRANCIS** [1] - 2:24
**Francis** [1] - 20:21

## G

**GABLE** [1] - 2:24
**Gable** [1] - 20:21
**GC** [1] - 2:5
**generally** [1] - 17:4
**GEORGETTE** [1] - 2:12
**grant** [2] - 15:1, 17:4
**great** [4] - 14:13, 14:15, 15:2
**grievance** [52] - 4:17, 4:23, 4:24, 7:7, 7:11, 7:25, 8:9, 8:19, 9:1, 9:6, 9:10, 9:13, 9:20, 9:25, 10:5, 10:6, 10:15, 10:16, 11:4, 11:14, 11:25, 12:9, 12:11, 12:12, 12:14, 12:19, 12:20, 12:25, 13:1, 13:13, 13:14, 13:16, 13:22, 14:2, 14:6, 15:14, 15:21, 15:24, 15:25, 16:8, 16:10, 16:11, 16:14, 17:5, 17:10, 17:23, 18:11, 18:12, 19:2, 20:1, 20:2

## H

**harm** [1] - 11:20
**hear** [3] - 3:20, 4:7, 14:12
**heard** [1] - 8:19
**HEARING** [1] - 2:21
**hearing** [2] - 15:20, 16:4
**HEINEMAN** [1] - 2:18
**Heineman** [1] - 3:10
**held** [2] - 4:14, 18:21

**helpful** [1] - 20:10
**history** [1] - 7:1
**hmm** [1] - 4:4
**Honor** [20] - 3:5, 3:9, 3:24, 5:1, 6:6, 6:14, 6:20, 8:10, 9:2, 10:23, 11:7, 13:15, 13:24, 16:5, 17:20, 18:18, 19:14, 19:19, 20:13, 20:14
**Honor's** [1] - 19:23
**HONORABLE** [1] - 2:12
**Hospital** [1] - 6:9

## I

**identical** [2] - 18:8, 18:11
**identify** [1] - 17:20
**important** [1] - 18:20
**inaccuracy** [1] - 13:18
**Inc** [1] - 3:2
**INC** [1] - 2:3
**incident** [1] - 10:17
**include** [1] - 10:12
**included** [1] - 8:7
**Including** [1] - 14:17
**inconsistent** [1] - 19:20
**incorrect** [1] - 11:19
**increase** [3] - 10:13, 11:19, 13:9
**Instead** [1] - 19:12
**intent** [1] - 11:24
**interest** [1] - 7:22
**INTERNATIONAL** [1] - 2:5
**International** [1] - 3:2
**interpret** [2] - 7:18, 8:1
**interpretation** [17] - 4:20, 5:6, 5:14, 6:2, 7:14, 8:16, 10:10, 12:13, 12:24, 14:16, 14:24, 15:3, 16:2, 16:9, 16:11, 20:4
**interpreted** [1] - 7:16
**interpreting** [1] - 14:8
**invalidate** [1] - 15:25
**issue** [10] - 5:17, 8:20, 8:23, 8:24, 9:4, 10:13, 10:19, 16:9, 17:3, 17:7
**issues** [5] - 3:17, 3:19, 3:20, 5:8, 10:20
**itself** [4] - 5:15, 7:14, 13:23, 17:7

**J**

James [1] - 3:6
JAMES [1] - 2:16
JANUARY [1] - 2:8
JERSEY [3] - 2:1, 2:10, 2:13
JUDGE [1] - 2:12
jurisdictionally [1] - 10:19

**K**

Kennedy [7] - 3:10, 6:7, 10:22, 11:5, 11:9, 15:5, 16:19
KENNEDY [19] - 2:19, 3:9, 5:1, 5:22, 6:6, 6:11, 6:14, 6:20, 10:23, 11:10, 13:11, 13:15, 15:6, 16:25, 17:20, 18:18, 19:14, 19:18, 20:14
kind [1] - 3:17
KROLL [1] - 2:18
Kroll [1] - 3:10

**L**

labor [3] - 7:21, 15:11, 18:1
language [29] - 5:4, 5:7, 5:11, 5:14, 6:1, 6:2, 7:2, 7:14, 7:15, 7:17, 7:18, 7:19, 8:1, 8:3, 8:7, 8:8, 8:9, 9:16, 12:3, 15:16, 16:18, 17:7, 17:11, 17:13, 17:17, 18:25, 19:1, 19:2
large [1] - 17:25
last [2] - 14:4, 14:5
law [11] - 4:13, 14:17, 14:18, 15:3, 16:21, 17:1, 17:18, 18:1, 18:6, 18:16
lay [1] - 5:24
leeway [2] - 17:4, 17:16
legal [3] - 15:21, 16:1, 19:20
Letourneau [3] - 3:6, 8:11, 19:22
LETOURNEAU [18] - 2:16, 3:5, 3:24, 4:4, 4:8, 8:10, 8:12, 9:14, 10:5, 12:8, 13:24, 14:1, 14:15, 14:18,

16:7, 18:5, 19:23, 20:13
letter [1] - 10:4
lifted [1] - 13:16
light [1] - 15:19
likely [1] - 13:16
likewise [1] - 20:5
listed [1] - 10:16
LLC [1] - 2:18
LLP [1] - 2:15
Local [2] - 3:3, 3:11
LOCAL [1] - 2:6
look [2] - 7:19, 10:3
looking [1] - 18:23

**M**

Mack [2] - 4:14, 18:16
mails [1] - 8:23
mandated [10] - 4:16, 4:23, 9:7, 9:16, 12:20, 13:1, 14:2, 15:14, 19:25, 20:2
markedly [1] - 17:14
match [1] - 13:5
materially [1] - 17:22
matter [5] - 3:2, 9:22, 13:21, 20:15, 20:19
Matter [1] - 20:16
mean [2] - 9:10, 9:22
Meaning [1] - 3:21
means [1] - 11:20
mediation [1] - 5:25
mediations [1] - 9:11
medical [1] - 11:8
meeting [1] - 4:5
members [1] - 4:11
merits [1] - 13:22
MINCER [2] - 2:17, 11:7
Mincer [1] - 3:6
minds [1] - 4:5
mispronouncing [1] - 6:8
missed [1] - 11:19
modified [1] - 17:13
moment [2] - 6:11, 10:6
Monogahela [1] - 6:8
Morris [1] - 3:6
MORRIS [1] - 2:15
most [3] - 5:8, 18:18, 18:20
MOTION [2] - 2:21, 2:22
motion [2] - 3:13, 3:14
moving [1] - 7:3
MS [18] - 3:5, 3:24, 4:4, 4:8, 8:10, 8:12,

9:14, 10:5, 11:7, 12:8, 13:24, 14:1, 14:15, 14:18, 16:7, 18:5, 19:23, 20:13
multiple [1] - 17:12
must [2] - 4:17, 4:25

**N**

narrow [1] - 3:17
need [2] - 8:16, 9:25
needed [1] - 8:16
needs [1] - 7:15
negotiating [1] - 9:11
new [7] - 5:23, 8:6, 11:3, 11:10, 11:11, 11:17, 15:17
NEW [3] - 2:1, 2:10, 2:13
NO [1] - 2:4
nonadherence [1] - 15:23
note [2] - 10:7
noted [1] - 5:9
nothing [2] - 14:25, 16:12
notice [2] - 11:23
Number [1] - 3:3

**O**

occur [1] - 10:24
occurred [1] - 10:8
occurrence [7] - 10:11, 12:5, 12:17, 13:5, 13:7, 13:16, 13:20
occurrences [3] - 10:8, 10:14, 13:12
October [22] - 3:22, 4:12, 4:22, 5:3, 5:11, 5:12, 5:17, 6:3, 6:18, 6:19, 6:21, 6:23, 8:2, 8:21, 9:5, 10:14, 11:13, 14:6, 14:9, 19:13, 19:25
OF [3] - 2:1, 2:6, 2:13
OFFICIAL [1] - 2:25
ON [1] - 2:21
once [1] - 12:23
One [2] - 3:19
one [12] - 5:8, 6:11, 7:20, 7:24, 8:4, 10:1, 10:6, 13:20, 18:18, 18:19, 18:24, 20:4
ongoing [4] - 5:13, 5:23, 5:25, 11:15
opinion [1] - 20:12

opposed [2] - 12:6, 13:20
opposition [1] - 3:15
oral [1] - 3:15

**P**

page [1] - 4:9
paid [4] - 11:2, 11:11, 11:18
papers [1] - 3:16
paragraph [1] - 9:23
parcel [1] - 15:10
Parsons [1] - 3:11
PARSONS [1] - 2:18
part [1] - 15:10
particularly [2] - 6:23, 17:2
parties [18] - 3:16, 3:20, 4:9, 4:17, 5:24, 7:10, 9:11, 14:22, 15:15, 16:3, 16:13, 16:24, 17:4, 18:25, 19:17, 19:18, 20:3, 20:8
parties' [3] - 9:9, 16:17, 16:20
PATRICE [1] - 2:16
Patrice [1] - 3:5
pause [1] - 6:13
pay [1] - 10:12
paycheck [3] - 11:3, 11:10, 11:18
paychecks [3] - 13:8, 13:14, 13:18
paying [1] - 14:9
per [2] - 14:10, 18:11
perfectly [2] - 15:18, 17:25
petition [1] - 11:1
PETITIONER [1] - 2:3
petitioner's [1] - 3:13
PETITIONER'S [1] - 2:21
pieces [1] - 18:20
place [1] - 4:11
plain [1] - 15:17
PLAINTIFF [1] - 2:17
point [7] - 6:5, 7:5, 8:22, 17:21, 18:6, 18:19, 19:20
position [1] - 14:13
post [1] - 10:25
precisely [1] - 16:15
presented [1] - 15:20
pretty [1] - 4:2
principle [1] - 15:7
principles [1] - 17:8
procedural [4] -

13:21, 14:7, 15:22, 18:2
procedure [13] - 4:25, 7:11, 8:19, 11:14, 12:1, 12:19, 15:14, 15:21, 15:24, 16:8, 16:10, 16:11, 19:3
procedures [14] - 4:17, 4:23, 9:6, 9:13, 12:15, 12:20, 13:2, 14:2, 14:3, 17:5, 18:11, 18:13, 20:1, 20:3
proceed [1] - 9:17
proceeding [1] - 9:13
proceedings [1] - 20:19
process [5] - 12:3, 12:14, 16:14, 17:16, 17:23
proposals [3] - 5:23, 7:19, 7:23
proposed [2] - 5:4, 5:6
proposing [1] - 8:6
provides [1] - 15:10
provision [8] - 4:20, 8:20, 9:4, 9:18, 10:10, 14:20, 17:1, 18:24
provisions [2] - 16:21, 20:5
PTASIEWICZ [1] - 2:18
Ptasiewicz [1] - 3:10
public [1] - 7:21
pull [1] - 6:11
purpose [1] - 15:7
pursue [1] - 11:24
put [3] - 8:2, 12:8, 13:4

**Q**

questions [4] - 3:16, 3:18, 19:21, 20:10
quote [2] - 3:25, 4:8

**R**

raise [2] - 3:20, 14:6
raised [1] - 9:20
ratification [2] - 4:10, 4:11
ratified [3] - 3:22, 5:20, 6:4
reached [1] - 4:9
read [6] - 3:16, 6:7, 15:1, 15:16, 15:19, 18:13

**reading** [3] - 9:23, 14:20, 16:17
**realized** [1] - 13:9
**reason** [1] - 9:16
**reasoning** [7] - 12:10, 12:22, 13:23, 17:24, 19:8, 19:20
**receive** [1] - 15:8
**received** [1] - 16:3
**record** [3] - 3:1, 10:18, 20:19
**REDEKER** [1] - 2:16
**Redeker** [1] - 3:6
**reduce** [1] - 12:15
**refers** [1] - 17:13
**reformatting** [4] - 4:18, 5:5, 8:13, 8:15
**relations** [2] - 7:21, 15:11
**relationship** [1] - 7:3
**relying** [2] - 16:22, 17:18
**remedy** [1] - 13:22
**reoccurring** [1] - 11:3
**repeatedly** [2] - 8:6, 9:19
**report** [5] - 10:6, 10:15, 10:16, 12:9, 13:1
**Reporter** [1] - 20:24
**REPORTER** [1] - 2:25
**required** [2] - 7:25, 9:6
**requirements** [1] - 15:18
**reserve** [1] - 20:11
**resolution** [1] - 15:11
**resolve** [1] - 7:8
**respect** [1] - 14:13
**responded** [2] - 8:5, 8:6
**RESPONDENT** [1] - 2:6
**respondent's** [1] - 3:14
**response** [2] - 8:2, 14:7
**result** [1] - 5:22
**rewriting** [1] - 5:7
**ripe** [1] - 9:4

### S

**sake** [1] - 7:7
**salient** [1] - 5:8
**satisfactory** [1] - 12:17
**scheduled** [1] - 3:15
**seated** [1] - 3:19
**second** [1] - 10:11

**Section** [1] - 16:15
**sector** [1] - 7:21
**see** [4] - 3:19, 7:12, 9:2, 10:6
**seeking** [1] - 17:17
**seem** [1] - 19:16
**seeming** [1] - 6:16
**sending** [1] - 10:3
**separate** [1] - 10:13
**set** [2] - 6:25, 7:2
**SETH** [1] - 2:19
**Seth** [1] - 3:9
**setting** [1] - 10:18
**settled** [2] - 14:3, 14:10
**settlement** [1] - 12:18
**shall** [2] - 12:14, 12:15
**shortly** [1] - 10:9, 20:12
**show** [1] - 9:12
**sides** [1] - 7:22
**signature** [1] - 18:21
**Signature** [1] - 20:24
**signed** [2] - 8:9, 19:5
**significant** [2] - 4:3, 7:5
**significantly** [2] - 19:8, 19:10
**simply** [1] - 13:16
**single** [1] - 8:20
**situation** [2] - 15:19, 17:6
**situations** [2] - 16:16, 17:2
**sooner** [1] - 12:6
**sorry** [1] - 11:5
**Southwest** [6] - 18:7, 18:17, 18:19, 18:20, 19:9, 19:10
**specific** [1] - 18:24
**specifically** [4] - 4:1, 17:21, 18:19, 18:21
**stand** [1] - 11:14
**stand-in** [1] - 11:14
**start** [1] - 3:18
**started** [1] - 13:8
**STATE** [1] - 2:9
**state** [4] - 4:9, 4:18, 12:21, 14:2
**STATES** [1] - 2:1
**Steelworkers** [1] - 18:16
**step** [1] - 14:7
**still** [8] - 4:16, 5:18, 11:14, 11:19, 11:20, 11:21, 17:7, 18:16
**StoneMor** [2] - 3:2, 3:7
**STONEMOR** [1] - 2:3

**STREET** [1] - 2:9
**strict** [1] - 17:4
**strictly** [1] - 12:1
**strictures** [1] - 15:23
**subject** [1] - 10:24
**submission** [1] - 10:4
**submit** [1] - 12:2
**submitting** [1] - 9:9
**sufficient** [2] - 9:12, 9:15
**superintendent** [1] - 12:16
**support** [1] - 16:22
**supported** [2] - 12:11, 12:22
**supposed** [1] - 10:20
**system** [1] - 15:10

### T

**TEAMSTERS** [1] - 2:6
**Teamsters** [2] - 3:3, 3:11
**telephone** [1] - 11:6
**tentative** [2] - 3:22, 17:15
**term** [2] - 4:3, 5:12
**terms** [12] - 6:19, 6:21, 6:25, 7:4, 7:8, 8:13, 8:14, 8:15, 12:10, 14:19, 15:17, 16:2
**testimony** [1] - 16:3
**themselves** [1] - 9:7
**therefore** [1] - 4:6
**Third** [2] - 4:13, 18:15
**throughout** [2] - 11:24, 17:12
**thrown** [1] - 5:23
**timeframe** [1] - 12:2
**timelines** [1] - 18:2
**timely** [1] - 18:10
**TO** [2] - 2:21, 2:22
**today** [2] - 5:20, 20:9
**together** [1] - 7:9
**toll** [3] - 16:13, 16:21
**tolling** [1] - 20:3
**tone** [1] - 7:2
**took** [1] - 4:11
**towards** [1] - 15:15
**transcript** [1] - 20:18
**TRENTON** [1] - 2:10
**tried** [1] - 18:10
**trigger** [1] - 13:1
**Trucks** [2] - 4:14, 18:16
**trying** [2] - 7:9, 14:23
**two** [6] - 7:19, 7:22, 7:23, 10:8, 10:13, 11:19

### U

**U.S** [2] - 2:12, 2:25
**ultimately** [1] - 7:15
**Um-hmm** [1] - 4:4
**under** [7] - 9:13, 12:11, 15:22, 16:21, 17:8, 18:12, 20:2
**Under** [1] - 17:15
**underlying** [1] - 19:9
**union** [17] - 4:11, 4:24, 6:16, 6:20, 7:6, 7:8, 8:8, 8:14, 8:25, 11:4, 12:2, 12:14, 12:15, 13:17, 18:5, 18:10, 18:25
**union's** [10] - 3:25, 4:8, 4:11, 4:18, 6:22, 11:12, 11:16, 11:24, 15:23, 17:9
**UNITED** [1] - 2:1
**unresolved** [2] - 4:15, 4:19
**up** [3] - 6:11, 7:9, 15:4

### V

**VACATE** [1] - 2:21
**vacate** [1] - 3:14
**vacated** [2] - 18:8, 18:9
**valid** [8] - 3:21, 4:6, 5:17, 5:19, 5:20, 11:20, 16:1, 19:13
**Valley** [1] - 6:9
**versus** [1] - 3:2
**viable** [1] - 11:21
**view** [1] - 15:19
**violation** [6] - 11:3, 11:11, 12:13, 12:21, 12:25, 17:3
**violations** [3] - 10:24, 11:15, 18:3
**vote** [1] - 4:11
**Vs** [1] - 2:4

### W

**wage** [6] - 10:13, 11:1, 11:11, 11:19, 20:5
**waited** [1] - 13:3
**waiting** [3] - 7:6, 7:7, 17:9
**waive** [1] - 4:20
**waiving** [1] - 13:17
**wants** [1] - 6:17
**ways** [2] - 5:19, 6:17
**wholly** [2] - 15:4, 15:6

**writing** [2] - 9:10, 12:15
**written** [1] - 10:4
**wrongly** [2] - 11:2

### Y

**years** [1] - 11:19